**West Norriton Township v. Abel Investment Co.**

*Russell J. Brownback*, for plaintiff.

*Wisler, Pearlstine & Talone*, for defendants.

GROSHENS, J., April 30, 1959.—This case is now before the court on two sets of preliminary exceptions, namely: objections to the jurisdiction and objections in the nature of a demurrer and a motion for more specific pleading.

The objections to the jurisdiction point out that the allegations of the complaint set forth that Abel Investment Corporation, a Pennsylvania corporation, has offices in Delaware County, and that New Amsterdam Casualty Company, a New York corporation, has a branch office in Philadelphia County. The objections to jurisdiction then allege that neither defendant conducts business in Montgomery County and that the action is not based upon a policy of insurance. These objections to jurisdiction were not argued before the court en banc and are not mentioned in defendants' brief. Even if they have not been abandoned, they are without merit. The Abel Investment Corporation engaged in the subdivision and residential development of two large tracts of land in plaintiff township in this county, and the New Amsterdam Casualty Company executes large numbers of bonds within the shadow of the Court House, many of which are on file in the public offices of this county. Furthermore, the complaint alleges transactions in this county out of which the causes of action arose. We, therefore, dismiss the preliminary objections to jurisdiction.

The preliminary objections in the nature of a demurrer admit as true all well-pleaded, material and relevant facts averred in the complaint, every inference fairly deducible from such facts and all facts of which the court may take judicial notice. A summary of the averments, and inference therefrom, of the complaint will suffice for the purposes of this opinion.

On May 26, 1953, and for many months thereafter, Abel Investment Corporation was engaged in planning and developing the subdivision of two large tracts in West Norriton Township, a first class township.

At that time The First Class Township Code empowered township commissioners to adopt, by ordinance, land subdivision regulations, and further provided that the township be assured by means of a proper completion guarantee in the form of a bond that the improvements, set forth in the plan of subdivision, should be installed in strict accordance with the standards and specifications of the township, prior to the approval and the recording of the plan of subdivision.

At that time, West Norriton Township had enacted a land subdivision control ordinance which provided, as a prerequisite to the approval of a plan of subdivision, a bond for the satisfactory construction and installation of all required public improvements appearing on such plan.

In accordance with the statute and the ordinance, Abel Investment Corporation, on May 26, 1953, gave to the township a bond in the sum of $40,000, and on March 1, 1954, gave to the township a bond in the sum of $28,000, with New Amsterdam Casualty as surety on both bonds.

These bonds, after the usual statements of the obligations, and the references to the ordinance and its requirements, were conditioned as follows:

"Now, the condition of this obligation is such, that if the above-bounden Principal Obligor shall satisfac-

torily construct and install all required public improvements and restore all existing streets affected by the proposed construction, as set forth in the final subdivision plans and supporting materials as required and prescribed by Article VI, Section 600, of the West Norriton Subdivision Control Ordinance of 1952, and shall otherwise comply with all of the provisions of said Ordinance, which Ordinance is incorporated herein by reference, then this obligation to be void, otherwise to be and remain in full force and virtue."

The bonds were approved and accepted and, after the subdivision plans received final approval by the township commissioners, Abel Investment Corporation proceeded with the developments.

The public improvements were not constructed in accordance with township standards and specifications in many respects and failed to receive township approval. During construction and subsequently, the township commissioners and their representatives made frequent demands upon both defendants to correct defective and substandard work, which defendants failed, neglected and refused to do.

On November 17, 1957, the township commissioners adopted a resolution wherein they declared the bonds to be in default and forfeited the full amount thereof, $68,000, to be payable to the township, and directed the township solicitor to enforce collection.

The preliminary objections in the nature of a demurrer allege: (1) The complaint fails to set forth in what manner and to what extent the township has suffered damage by reason of the default under the bonds; (2) the complaint fails to set forth the cost of correcting the defective work and that the claim for the face amounts of the bonds would constitute a forfeiture and not compensating damages; (3) the complaint fails to set forth that the township has suffered any loss whatsoever by reason of the breaches of the

conditions of the bonds, and (4) the complaint fails to set forth that township has accepted the public improvements. The fourth objection alleges the township has not accepted dedication of these public improvements and, therefore, the township has no obligation to correct defective work and hence would not suffer any damage by reason of the alleged defects. The fact of nonacceptance is not pleaded in the complaint, and to that extent the preliminary objections are defective. However, for the purposes of this opinion we will consider the fact of nonacceptance as well pleaded, since the parties in their oral argument and in their briefs employ the fact of nonacceptance in their reasoning.

The preliminary objection in the nature of a motion for more specific pleadings complains that in the event the township is entitled to collect under said bonds, the township has failed to set forth any damages whatsoever and should be required to include an itemized statement thereof in an amendment to the complaint.

We will first consider the preliminary objections in the nature of a demurrer.

The First Class Township Code of June 24, 1931, P. L. 1206, as amended by the Act of May 31, 1947, P. L. 362, to include article XXX-A—Land Subdivisions, 53 PS §§58061-58068, is a comprehensive grant of power to first class townships to regulate in great detail the many phases of land subdivision and development in the rapidly growing suburban areas of the Commonwealth.

This enabling legislation was born out of the postwar municipal experience following World War I. In that era, the ring of first class townships on the periphery of the City of Philadelphia contended feebly with an influx of population from the city unequaled in their history. Belated building, plumbing, health and zoning regulations proved inadequate to integrate

the sudden growth of new villages with existing public facilities and, of even greater import, failed to secure for the inhabitants of those new villages the internal public improvements promised by the developers of the new villages. It was not unusual to see many new residential properties on large subdivisions entirely without, or with grossly inadequate public improvements.

Therefore, in planning for the post-war era of rapid expansion to follow World War II, township commissioners prevailed upon the General Assembly to add article XXX-A, supra, to The First Class Township Code in 1947.

To insure that the dwellers of the new villages in our suburban townships would not be "stuck in the mud," the legislature not only made it a misdemeanor, subject to a fine or imprisonment, or both, to violate land subdivision regulations, but by section 3066(c) of article XXX-A provided:

"Before approving any subdivision plan for recording, the Board of Township Commissioners shall either require that the necessary grading, paving and other street improvements, including where specified by the board, curbs, sidewalks, street lights, fire hydrants, water mains, sanitary sewers and storm sewers, shall have been installed in strict accordance with the standards and specifications of the township, or that the township be assured by means of a proper completion guarantee in the form of a bond or the deposit of funds or securities in escrow sufficient to cover the cost of the required improvements, as estimated by the township engineer, that the said improvements will subsequently be installed by the owner. . . ."

It is clear from the language of article XXX-A, in the light of the evil it was designed to prevent, that the legislature intended to provide a means of assur-

ing the proper construction and completion of the improvements to be dedicated to the public so that the purchasers and dwellers would receive what had been represented to them by the developers, and so that the township would not later be obliged to either construct or complete the improvements and pay the cost thereof out of the general revenues of the township or by assessments against the properties benefited.

The purpose of the bonds under consideration is not to punish the developer for its delinquencies, or to bring a windfall to the township, but to assure the dwellers of the "Country Club Homes" that they will receive the public improvements which were among the inducements to buy in the tract.

The township, as obligee in these bonds, represents the public generally, and the new owners and dwellers of "Country Club Homes" in particular. The paramount interest of the public and of these new home owners is "performance," and not "forfeiture." The public improvements in question should either be properly constructed by defendants or by the township using the proceeds of the bonds for that purpose. Any other result would be unfair and would work a hardship on these home owners who bought under the assuring aegis of municipal regulations. The prices paid for these homes must have included the costs of the proposed public improvements and, having paid for them, the home owners should have them.

The township argues the statute, the ordinance and the terms of the bonds contemplate that the sums mentioned in the bonds shall be penalties and that the full sums shall become forfeits absolute on the breach of the conditions. With this contention we cannot agree.

These bonds were intended to indemnify the township for the cost and expense of completing the public improvements in the event the developer did not do so. The township argues it has not enacted an ordinance

accepting the dedication of the public improvements, that it has no legal right to complete the improvements according to standard and, therefore, the bonds must be penal bonds, otherwise defendants would avoid the obligations. This is not a realistic argument. The full and complete authority over public facilities, such as streets and sidewalks, granted to townships contemplate that such facilities, when used by the public at large, will be embraced under the municipal wing. It is a matter of common knowledge that new home owners expect their streets and sidewalks, which are built under township supervision, to become part of the municipal domain. It is also a matter of common knowledge that township commissioners expect to extend township jurisdiction over new public streets and sidewalks built under the eye of the township engineer. And, as the township argues in its brief, "It is idle to argue that the township could indefinitely permit so large a segment of its population to continue to exist under such conditions and impossible to believe that the affected residents would remain quiescent under such circumstances. The commissioners have just grounds for supposing that applications would be made to the court to require the commissioners to take over, as township highways, the streets in question."

The township, as the representative of the 79 home owners, has a clear legal duty to collect, if possible, on these bonds and to apply the money collected to the correction of the substandard public improvements in the "Country Club Homes" tract. Justice requires no less than this.

First class townships may not prescribe fines and penalties exceeding $300 in any instance for the violation of ordinances. It seems anomalous to argue that by the device of a penal bond the township may

impose penalties of $68,000 for the violations of a subdivision ordinance.

We have examined the cases cited by counsel and Sedgwick on Damages (9th ed.), the leading treatise on the subject, and have found nothing contrary to the position taken in this opinion.

The preliminary objection in the nature of a motion for more specific pleading is meritorious. The complaint is woefully lacking in specificity as to alleged defects and the costs of remedy.

*Order*

And now, April 30, 1959, the preliminary objections to jurisdiction and the preliminary objections in the nature of a demurrer are dismissed. The preliminary objection in the nature of a motion for more specific pleading is sustained.

Plaintiff is granted 45 days from this date to file an amended complaint.